CRESCENT HILL, INCORPORATED, A DOMESTIC CORPO-
RATION, PROSECUTOR, v. BOROUGH OF ALLENDALE,
A MUNICIPAL CORPORATION OF THE STATE OF NEW
JERSEY, RESPONDENT.

Submitted January 19, 1937—Decided June 8, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
PERSKIE.

For the prosecutor, *William V. Rosenkrans.*

For the respondent, *Walter G. Winne.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The writ before us brings up
for review a certain resolution of the governing body of the
borough of Allendale, in Bergen county, New Jersey, which

denied a petition filed by the prosecutor to amend the zoning ordinance of the borough. The return includes the ordinance itself, the petition to amend same, the resolution denying that petition, and the depositions taken by the parties.

The prosecutor sought, by the petition, to have the zoning ordinance amended so that a particular parcel of land owned by it might be used for business purposes.

The property in question is zoned for residential use and fronts on a state highway (route 2) which, at this locality, runs through part of the easterly end of the borough of Allendale. The parcel has a highway frontage of two hundred and thirty-five feet, a depth of one hundred and fifty feet, and will be a corner plot if and when a "proposed" street is laid out at the southerly side of the plot. The total highway frontage within the confines of the borough, on the east and west side of route 2, amounts to about one thousand three hundred and fifty feet.

Prior to the building of the state highway (route 2), the lands of the prosecutor fronted on Wilson road, which road runs in a general northeasterly direction, dividing the borough of Allendale from the borough of Saddle River. In this particular area said route 2 passes through Saddle River, which lies to the east of Allendale, and continues northerly, passing through but a small part of the borough of Allendale, thence on through the borough of Ramsey, to the north. Running as it does in a general northerly direction, it crosses Wilson road, which runs to the northeast, at an angle which we estimate at about thirty degrees or less, with the result that there is but nine hundred feet of land within the borough of Allendale, fronting on the westerly side of route 2, and four hundred and fifty feet of land fronting on the highway on the easterly side.

Were we to pass upon the testimony in the depositions, which we have carefully examined, our conclusion would be that the action of the municipal authorities, in declining to amend the ordinance in question, was entirely justified, but this we think is beside the point because of the view we take of the matter from the standpoint of practice and procedure.

On June 18th, 1936, the prosecutor, by Max P. Arlt, its attorney, presented to the governing body of the borough its petition to have the zoning ordinance amended for the purposes above stated. The petition was unanimously rejected and the prosecutor was so advised by letter of the borough clerk, dated June 23d, 1936. A writ of *certiorari* was allowed on September 29th, 1936.

Our view is that the writ was improvidently allowed and should now be dismissed. The orderly procedure in matters of this kind, where an owner desires to erect a building on his land, is to apply for a building permit to the municipal officer in charge of that department of the municipality. If the permit is not granted the practice is to appeal to the board of adjustment, in accordance with the provisions of chapter 274, *Pamph. L.* 1928. Under this statute (section 9, page 698) provision is made for the creation of a board of adjustment, which board, when appointed, "may * * * make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." By the statute, the board of adjustment has specified powers which are set out in full therein (section 9, subsections 1 to 4, inclusive). Under subsections 2 and 3, the board of adjustment may hear and decide special exceptions to the terms of the ordinance subject to certain restrictions and may authorize, upon appeal in specific cases, such variance from the terms of the ordinance as will not be contrary to public interest, &c., also subject to restriction.

It is the fourth subsection which, in our view, is peculiarly applicable to this case. Under it the board of adjustment is empowered, "to recommend in writing to the governing board or board of public works, upon appeal in specific cases, that a structure or use be allowed in a district restricted against such structure or use where the lands in respect of which such recommendation is made do not abut a district in which such structure or use is authorized by the zoning ordinance or where such lands are more than one hundred and fifty (150) feet beyond the boundary line of the district in which such

structure or use is allowed by the zoning ordinance. Whereupon, the governing body or board of public works may, by resolution, approve or disapprove such recommendation; and in case such recommendation shall be approved by the governing body or board of public works, then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use. * * *" *Pamph. L.* 1928, *ch.* 274, *p.* 702.

This procedure was not adhered to in this case. A writ of *certiorari* should not be sought in the ordinary case when there are available other means of review or appeal by which appropriate relief might be had. *Payne* v. *Seabright,* 14 *N. J. Mis. R.* 756; compare *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404, 407.

We might perhaps stop here and dismiss the writ, but the return before us shows that at some time prior to May 28th, 1936, Mr. Arlt, representing an intending purchaser or lessee of the premises in question, appeared before the board of adjustment, probably by appeal (although just what the procedure was does not appear), and that body had declined to grant relief or to recommend to the governing body that the proposed structure be allowed in the restricted area. If the interested party had been aggrieved, the opportunity was then present to apply for a writ of *certiorari* to review the action complained of. No such application was made and it cannot now be made to review that action since under the statute (section 9, page 702) no writ may issue unless application therefor be made within thirty days after such adverse action. That limited time has expired.

At this date the prosecutor should not be permitted, by indirection, to review the adverse decision of the board of adjustment.

The writ will be dismissed, with costs.