[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 71 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 72 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 73 
This is a zoning case. A writ of certiorari brings before the court two resolutions, one by the Board of Adjustment of the Town of Belleville, recommending that the respondent Kiernan be permitted to make a non-conforming use of his land, and the other, an approval of the recommendation by the Board of Commissioners of the town acting under authority of R.S. 40:55-39(d). Upon the final hearing, the respondents moved to dismiss the writ on the ground that it had not been applied for within the time limited by R.S. 40:55-46, which requires that the application for a writ to review a decision of the board of adjustment shall be made within 30 days. In case the board of adjustment declines to recommend that the proposed structure or use be allowed, its action is final and the statutory limitation controls. Crescent Hill, Inc. v. Allendale, 118 N.J. Law 302(Sup.Ct. 1937). But where the board of adjustment makes the recommendation, its action is inoperative until approved by the governing body, and the 30-day limitation does not apply.Brandon v. Montclair, 124 N.J. Law 135; 125 N.J. Law 367(E. A. *Page 74 
1940). While the statute does not expressly fix a time within which a review of the resolution of the governing body must be sought, yet we are satisfied that to give full effect to the legislative scheme, application for the writ should generally be made within 30 days after the governing body acts. In the instant case, the application was made upon notice to the interested parties 43 days after the date of the resolution of the Board of Commissioners. Whether the timeliness of the application was then argued does not appear. The court may still dismiss the writ because of laches in applying for it, even though the cause is ready for decision upon the merits, Weissinger v. Teaneck,10 N.J. Misc. R. 1093, (Sup.Ct. 1932), but the court should do so only if that course would promote substantial justice. None of the parties are prejudiced by the short delay in applying for the writ and so the motion to dismiss is denied.
The prosecutors urge that the recommendation of the Board of Adjustment was invalid because it was not based on the sworn testimony of witnesses. It has been said, in Fonda v.O'Donohue, 109 N.J. Law 584 (Sup.Ct. 1932), for example, that a board of adjustment can act only on "legal evidence." But more recently it has been decided that the board's judgment may be founded upon an examination of the site, made either by the board or a committee appointed for the purpose. Amon v. Rahway,117 N.J. Law 589 (Sup.Ct. 1937); Wilson v. Union Township,123 N.J. Law 474 (Sup.Ct. 1939). The ruling principle is that the board may not act unreasonably or capriciously; there must be a factual foundation on which its judgment is built. How the facts shall be determined depends on the circumstances of the particular matter. In the instant case, there was no dispute over the facts on which the Board's recommendation was sought or was opposed; they were well-known to the Board and to all the parties. Under such circumstances, the Board could properly act without taking testimony or making a formal inspection of the site.
The original action of the Board was very brief, merely a recommendation that the requested variance be allowed and *Page 75 
contained no finding of facts or other recitals. After the recommendation had been approved by the Commissioners, and after the writ of certiorari had been allowed, the Board of Adjustment adopted a second resolution declaring that at the time of its former action, it had found certain facts which were the bases of its recommendation. If the second resolution had not been adopted, this court might have considered that the lack of a finding of facts by the Board prevented the court from considering the merits of the matter, but in that event the court would have directed the Board to set forth its findings, or at most the court would have annulled the record without prejudice to further proceedings by the municipal authorities, as was done in Brandon v. Montclair, supra. The passage of the second resolution does not impair any right of the prosecutors and it enables the court immediately to come to grips with the real issue. The recitals and findings contained in it will be given the same effect as if they were part of the Board's original action.
The respondent Kiernan bought a plot of land at the corner of Union Avenue and Lloyd Place, intending to erect there a building to be used as a funeral home and dwelling. But the property is in a zone restricted to one-family residences, and is more than 150 feet distant from a district in which a funeral home is authorized by the zoning ordinance. So he appealed to the Board of Adjustment to recommend to the governing body that he be permitted to carry out his plan.
Union Avenue is one of the four north and south through-streets in Belleville. Two bus lines run along the street — a bus about every ten minutes — and other vehicular traffic is heavy. Opposite Kiernan's land is a public school with its large playground. Nearby is a non-conforming use that antedates the zoning ordinance — a small grocery store. With these exceptions, all the structures on Union Avenue, from a point 1500 feet south of the premises in question to a point 1000 feet north, are one-family residences. Further north are apartment houses, stores, gas stations. The real estate appraiser whose deposition is presented by the respondents, expresses the opinion that *Page 76 
this half-mile stretch of Union Avenue is doomed as a residential district; that the time is not far off when it must be zoned for business. Lloyd Place is a street of attractive residences, most or all of them built within the past ten years.
Do these facts present a situation in which the Board of Adjustment may recommend, and the Board of Commissioners approve, the issuance of the permit which Kiernan seeks? Paragraph d ofR.S. 40:55-39, under which the Boards acted, contains no express restrictions. But by implication the exercise of power under this paragraph is subject to the conditions prescribed inparagraph c. Brandon v. Montclair, supra. To justify the action now under review it must appear that "owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and * * * that the spirit of the ordinance shall be observed and substantial justice done," by granting the permit.
The supposed hardship resulting from a strict adherence to the zoning scheme bears equally on all land owners along that part of Union Avenue which we have described, or at least on all whose lots are vacant, or whose buildings may readily be converted to commercial uses. There is nothing peculiar in Kiernan's position.Paragraph d is operative only where the applicant's plight is "owing to special conditions," that is, to circumstances uniquely touching his land as distinguished from conditions that affect the whole neighborhood. Brandon v. Montclair, supra; Potts v.Board of Adjustment of Princeton, 133 N.J.L. 230 (Sup.Ct.
1945).
Again, it does not appear that Kiernan suffers "unnecessary hardship." "Is the environment such that the lot is not reasonably adapted to a conforming use? It is not per se a sufficient reason for a variation that the non-conforming use is more profitable to the land owner." Brandon v. Montclair, supra;Scaduto v. Bloomfield, 127 N.J. Law 1 (Sup.Ct. 1941);National Lumber Products Co. v. Ponzio, 133 N.J. Law 95 (Sup.Ct. 1945). For cases from other jurisdictions, see valuable note in 168 A.L.R. 13. Keirnan's intention *Page 77 
to use his building not only for business but as his home indicates that the land is suitable for residential use in conformity with the zoning ordinance.
We have not considered to what extent the amendments to the zoning statute which were approved August 9, 1948, P.L. 1948,c. 305, enlarge the powers of boards of adjustment. The validity of the Board's action depends upon the law then in force. Peshine Realty Co. v. Scott, 4 N.J. Misc. R. 977(Sup.Ct. 1926).
The resolutions under review will be vacated.